UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------
ILADA MUNCK,

                    Plaintiff,

          -against-                          No. 23-CV-9188 (LAP)

SIMONS FOUNDATION, DENISE DUNLEAVY,          OPINION & ORDER
MONIKA LENARD, AND ELISA NIKOLOULIAS,

                    Defendants.
-------------------------------------
```

LORETTA A. PRESKA, Senior United States District Judge:

Simons Foundation ("Simons"), Denise Dunleavy, Monika Lenard, and Elisa Nikoloulias (collectively, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Ilada Munck's ("Plaintiff") Complaint, (see dkt. no. 1 ["Compl."]).[1] Plaintiff opposes Defendants' motion.[2] For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

---

[1] (See Defs.' Notice of Mot. to Dismiss ("Notice of Mot. to Dismiss"), dated Jan. 29, 2024 [dkt. no. 16]; Decl. of Nancy V. Wright in Supp. of Defs.' Mot. to Dismiss, dated Jan. 29, 2024 [dkt no. 17]; Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Br."), dated Jan. 29, 2024 [dkt. no. 18]; Reply Decl. of Olivia Orlando-Donovan in Further Supp. of Defs.' Mot. to Dismiss, dated Mar. 5, 2024 [dkt. no. 26]; Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss ("Defs.' Reply"), dated Mar. 5, 2024 [dkt. no. 27].)

[2] (See Decl. of Lawrence C. Glynn in Opp'n to Defs.' Mot. to Dismiss, dated Feb. 12, 2024 [dkt. no. 19]; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Opp'n Br."), dated Feb. 12, 2024 [dkt. no. 20].)

I.    **BACKGROUND**

For purposes of this motion, the Court accepts as true all factual allegations in the Complaint and must draw all reasonable inferences in favor of Plaintiff.

A.    **Factual Background**

Plaintiff, a Thai woman, was employed at Simons as a Hospitality Specialist on the hospitality team between November of 2017 and March 8, 2023.   (See Compl. ¶¶ 12, 15, 17-18.) Plaintiff was responsible for the general operations of office pantries and the staff dining room, including assisting with lunch orders and taking inventory of other food orders, as well as interviewing prospective new hires.   (See id. ¶ 14.)   Plaintiff was the only Thai or Asian person on the hospitality team.   (See id. ¶ 18.)

Joanna Pacholarz, a Polish woman, is the manager of the hospitality team.[3]   (See id. ¶¶ 56 n.2, 77.)   Defendant Denise Dunleavy, a white woman, is a supervisor of the hospitality team. (See id. ¶¶ 5, 17.)   Pacholarz is Dunleavy's boss.   (See id. ¶ 56 n.2.)  When Pacholarz took maternity leave in early 2020, Dunleavy managed the hospitality team in her absence.   (See id. ¶¶ 20-21.)

At all times relevant to the allegations set forth in the Complaint, Defendant Monika Lenard was the Director of Building

---

[3] Pacholarz is not a named party in the instant action.

Operations at Simons. (See id. ¶ 6.) Defendant Elisa Nikoloulias was hired as the Senior Manager of Hospitality on or around October 12, 2022. (See id. ¶ 94.)

Plaintiff alleges, with varying degrees of specificity, a series of incidents beginning in early 2020 that subjected her to a hostile work environment based upon her race (Asian) and/or ethnicity (Thai). (See id. ¶¶ 17, 100-16, 133-55, 172-94.) Further, Plaintiff alleges that she was subjected to unlawful retaliation because she was terminated following her participation in an anonymous survey in August of 2022 and a company investigation in which she raised complaints about her supervisor, Defendant Dunleavy. (See id. ¶¶ 16, 117-32, 156-71, 195-210.)

### i.  Facts Supporting Claims of Hostile Work Environment

Plaintiff alleges that beginning in early 2020, when Defendant Dunleavy joined the team, she was subjected to a hostile work environment based upon her race and/or ethnicity. (See id. ¶ 17.)

#### 1. Summer 2020

In the summer of 2020, Plaintiff and other members of the hospitality team reported to Pacholarz Dunleavy's "deplorable and abusive behavior[,]" which was "damaging [their] ability to perform their duties." (Id. ¶ 22.) Pacholarz raised these complaints to Lenard, who then called a meeting with Dunleavy. (See id. ¶¶ 23-24.) Pacholarz was allegedly "forced" to give up

the names of the people who had raised complaints. (See id. ¶ 24.) It is Plaintiff's belief that from this moment on, Dunleavy began to target Plaintiff and other members of the hospitality team. (See id. ¶ 28.) Shortly thereafter, one member of the hospitality team-Fatima Fall, a black woman—transferred to another department, and another member of the team resigned from Simons entirely. (See id. ¶ 29.) Plaintiff makes no allegation that Dunleavy's "deplorable and abusive behavior[]" in 2020 was discriminatory in nature. (See id. ¶ 22.)

### 2. The Holiday Party Incident

In or around December 2021, the hospitality team had a holiday party. (See id. ¶¶ 30, 63.) Plaintiff alleges that during the holiday party, Plaintiff addressed an overcharged restaurant bill, and Dunleavy became agitated. (See id. ¶¶ 31-33.) Dunleavy yelled at Plaintiff, "what are you going to do, pay the bill yourself?!" (See id. ¶ 33.) Plaintiff makes no allegation that Dunleavy's "outrageous and unhinged" behavior during the Holiday Party Incident was discriminatory in nature. (See id. ¶ 35.)

### 3. The Cell Phone Incident

In or around January 2022, Plaintiff left her cellphone on her desk while she conducted interviews for the hospitality team. (See id. ¶¶ 36-37.) Plaintiff alleges that Dunleavy picked up and went through Plaintiff's personal cellphone as part of Dunleavy's "targeted attack on Plaintiff." (Id. ¶ 37.) Plaintiff makes no

allegation that Dunleavy's "egregious behavior" during the Cell Phone Incident was discriminatory in nature.  (See id. ¶ 38.)

### 4. The Screaming Incident

On or around February 14, 2022, Dunleavy screamed "STOP" at Plaintiff over a misunderstanding about placing a lunch order. (See id. ¶¶ 39-42.)  Plaintiff does not allege that Dunleavy's "unhinged and . . . crazed" behavior during the Screaming Incident was discriminatory in nature.  (See id. ¶ 39.)

### 5. The Leaving Early Incident and April 2022 Meeting

In or around April 2022, Dunleavy called a meeting with Pacholarz and Plaintiff because someone had reported Plaintiff had for permitting a new trainee to leave early.  (See id. ¶¶ 56-57.) During this meeting, Dunleavy informed Plaintiff that she did not have authority to dismiss employees or to leave work early.  (See id. ¶¶ 58-59.)  Plaintiff alleges that "no other employee on the team was subject to this type of abusive behavior."  (Id. ¶ 59.) Again, Plaintiff makes no allegation in the Complaint that Dunleavy's "abusive behavior" during the Leaving Early Incident was at all linked to Plaintiff's race and/or ethnicity.  (See id. ¶ 59.)

According to Plaintiff, at this April 2022 meeting, Dunleavy also accused Plaintiff of being rude to and not respecting Pacholarz.  (Id. ¶¶ 60-61.)  Plaintiff alleges that this was an attempt by Dunleavy to "create tension, animosity[,] and

resentment" between Pacholarz and Plaintiff, "the only Thai member of the team." (Id. ¶¶ 60, 62.)

At this April 2022 meeting, Dunleavy also brought up the Holiday Party Incident. (See id. ¶ 63.) Dunleavy screamed at Plaintiff, "'EVERYONE WORKED IN A RESTAURANT' while waiving her hands maniacally in the air and in a threatening manner." (Id. ¶ 65.) Plaintiff alleges that she feared the situation was "leading towards physical violence." (Id. ¶ 67.) Plaintiff alleges that Dunleavy's "palpable, continuous[, and] pervasive [hostility]" towards Plaintiff was "objectively in violation of Title VII[,]" (id. ¶ 71), but she fails to point to any specific facts indicating that Dunleavy's behavior during the April 2022 meeting was discriminatory in nature.

### 6. The K Cup Incident

In or around May 2022, a service person came to fix the hospitality team's K Cup machine. (See id. ¶¶ 43-44.) There was allegedly a miscommunication between Plaintiff and a member of the facilities department, Edgar Rodriguez, because neither team had scheduled the appointment. (See id. ¶¶ 43-51.) Following the service repair, Dunleavy asked Plaintiff how Rodriguez had assisted that day, and Plaintiff was honest that she had twice asked him for assistance. (See id. ¶¶ 52-54.) Plaintiff alleges that while she had previously enjoyed an "excellent, friendly working relationship" with Rodriguez, he no longer spoke to her

after the K Cup Incident. (Id. ¶¶ 49, 55.) Plaintiff alleges
that Dunleavy "clearly and purposely targeted Plaintiff[,]" making
Rodriguez "not like or trust" her anymore. (See id. ¶ 55.)
Plaintiff makes no allegation in the Complaint that Dunleavy's
"target[ing]" of Plaintiff during the K Cup Incident was
discriminatory in nature.

### 7. Undated Acts

In or around May 2022, Dunleavy allegedly made "vulgar and
offensive and disrespectful" comments about a candidate who had
experienced a seizure during an interview. (See id. ¶¶ 85-90.)
Plaintiff alleges that these comments demonstrate Dunleavy's
intolerance towards persons with disabilities. (See id.)
Plaintiff makes no allegation in the Complaint that Dunleavy's
behavior towards the candidate was discriminatory on the basis of
race and/or ethnicity. (See id.)

Plaintiff further alleges five undated incidents tied to her
claims for hostile work environment, including that: (1) Dunleavy
made "extremely offensive" comments about Jzabela Wyka's—a Polish
employee—hair and tattoos; (2) Dunleavy said "there will be no
more fucking Polish to be hired here"; (3) Dunleavy said "I'm going
to punch [Wyka] in the face"; (4) Lenard told Pacholarz "not [to]
hire black people"; and (5) Dunleavy said "[g]ood night bitches"
to Plaintiff and two other members of the hospitality team one

evening (the "Elevator Incident").[4]    (Id. ¶¶ 72-76, 91-92.) Plaintiff alleges that undated events (1), (2), and (3) confirmed Plaintiff's belief that "Dunleavy was targeting Plaintiff based upon her own ethnicity[,]" because Dunleavy clearly did not like "foreigners."  (Id. ¶ 74.)  Plaintiff makes no allegation in the Complaint that Lenard's comments to Pacholarz or Dunleavy's behavior during the Elevator Incident were discriminatory on the basis of Plaintiff's own race/ethnicity.

### ii. Facts Supporting Claims of Retaliation

On or around August 3, 2022, all members of the hospitality team received an anonymous survey containing performance-related questions about Dunleavy and Pacholarz. (See id. ¶¶ 84, 93.)  In her survey response, Plaintiff raised issues with Dunleavy's conduct.  (See id. ¶¶ 16, 93.)  For example, Plaintiff wrote that Dunleavy was a "dictator," (id. ¶ 93.vii.), who "values her own opinions," (id. ¶ 93.x.), and "creates . . . chaos," (id. ¶ 93.ii.).  Plaintiff complained that Dunleavy "puts the entire team on edge and makes for an unhealthy work environment."  (Id.

---

[4] The Court construes the five undated events to have taken place in the months prior to August 2022.  First, Plaintiff adopts a general chronological structure to the Complaint and lists events (1) through (5) before the events taking place on August 3, 2022. (See id. ¶¶ 72-76, 91-93.)  Further, events (1), (2), and (3) involve conduct related to Wyka, who was terminated on August 1, 2022.  (See id. ¶¶ 78, 81.)  Accordingly, the Court surmises that these five undated events occurred in the months prior to August 2022.

¶ 93.iii.)    Further, Plaintiff wrote that "Dunleavy expects excellence from the team," which was "a good attribute," but that "[Dunleavy's] demanding behavior towards others [who] do not reach this level of excellence [was] a frustrating issue[.]"    (Id. ¶ 93.xi.)    Plaintiff also reported that Dunleavy had a "personal dislike" for a trainee and would "often comment[] on her appearance that made the team feel uncomfortable" and that "this [was] not the first instance of this behavior."    (Id. ¶ 93.xii.)    Finally, Plaintiff wrote that it was "quite obvious" that Dunleavy's "personality type" was not an ideal fit for the hospitality team. (Id. ¶ 93.xiv.)    According to Plaintiff, Dunleavy was permitted to read the anonymous survey responses and knew who had written them. (See id. ¶ 120 n.3.)

Following the survey, Plaintiff alleges a series of events in support of her claims for retaliation.    First, on or about October 12, 2022, Plaintiff alleges that Lenard hired Nikoloulias as the Senior Manager of Hospitality to "specifically target" Plaintiff as a "calculated, pretextual termination."    (Id. ¶ 94.) Plaintiff alleges that, in the months following the survey, she was scheduled for "frequent and atypical overtime shifts as punishment[.]"    (Id. ¶ 95.)    Further, Plaintiff alleges that she participated in Simons' investigation concerning complaints raised in the anonymous survey by attending four meetings with Simons' officers and directors.    (See id. ¶ 121.)    Plaintiff alleges that

she was the only employee who was required to participate in these "interrogation sessions." (Id. ¶ 122.) In the months following her participation in the survey and post-survey investigation, Plaintiff alleges that she was "disciplined" for gossiping and was accused of not being a team player. (Id. ¶¶ 96-97.)

On March 8, 2023, seven months after she participated in the anonymous survey and despite "years of receiving nothing but exemplary performance reviews," Plaintiff was terminated from Simons. (See id. ¶¶ 15, 98.) According to Plaintiff, her termination was in retaliation to complaints she had raised regarding Defendant Dunleavy. (See id. ¶ 16.)

### B.    Administrative & Procedural History

On May 25, 2023, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (See id. ¶ 10.) On October 11, 2023, the EEOC issued a Notice of Right to Sue letter. (See id.; Compl., Ex. A.)

On October 19, 2023, Plaintiff filed the instant action. In her Complaint, Plaintiff alleges claims of hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq.; and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, et seq. Specifically, Plaintiff brings six counts against Defendants: (1) Count One alleges a hostile work environment in

violation of Title VII; (2) Count Two alleges retaliation in violation of Title VII; (3) Count Three alleges a hostile work environment in violation of the NYSHRL; (4) Count Four alleges retaliation in violation of the NYSHRL; (5) Count Five alleges a hostile work environment in violation of the NYCHRL; and (6) Count Six alleges retaliation in violation of the NYCHRL. (See Compl. ¶¶ 100-210.)

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Such factual allegations must nudge claims "across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 570.

In reviewing a motion to dismiss, a court must accept as true the complaint's well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. See Giunta v. Dingman, 893 F.3d 73, 78-79 (2d Cir. 2018). A reviewing court does not, however, need to accept as true "[t]hreadbare recitals of the elements of a cause of action[.]" Iqbal, 556 U.S. at 678.

Further, "[i]n considering a motion to dismiss for failure to state a claim under [Rule 12(b)(6)], a district court must limit itself to facts stated in the complaint or in documents attached to the complaint . . . ." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). "[I]t is axiomatic that [a c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." See Cambridge Cap. LLC v. Ruby Has LLC, 565 F. Supp. 3d 420, 453 n.11 (S.D.N.Y. 2021) (citation omitted). Courts routinely decline to review factual allegations which appear for the first time in an opposition brief where they appear nowhere in the complaint. See, e.g., Earl v. Good Samaritan Hosp. of Suffern N.Y., 625 F. Supp. 3d 292, 300-01 (S.D.N.Y. 2022); Black v. Ganieva, 619 F. Supp. 3d 309, 334 n.15 (S.D.N.Y. 2022).

## III. DISCUSSION

Defendants move to dismiss the Title VII, NYSHRL, and NYCHRL claims on four grounds:  (1) the Title VII, NYSHRL, and NYCHRL hostile work environment claims are each time-barred, and the NYSHRL claims are procedurally barred; (2) the Title VII, NYSHRL, and NYCHRL hostile work environment claims are each legally deficient; (3) the Title VII, NYSHRL, and NYCHRL retaliation claims are each legally deficient; and (4) the Title VII, NYSHRL, and NYCHRL hostile work environment and retaliation claims each fail to state a claim against the individual defendants. (See generally Defs.' Br; Defs.' Reply.)  Plaintiff opposes, arguing that (1) the

continuing violation doctrine saves the untimely allegations, and the NYSHRL claims are not procedurally barred; (2) the Complaint makes out a claim for hostile work environment under the NYCHRL; and (3) the Complaint plausibly alleges claims for retaliation. (See generally Opp'n Br.)  As the Court has original jurisdiction over the Title VII claims, the Court analyzes these claims first.

### A.   Plaintiff Cannot Plausibly Allege a Title VII Claim

The first and second causes of action are claims for hostile work environment on the basis of race and/or ethnicity and for retaliation under Title VII, respectively.  (See Compl. ¶¶ 1, 100-32.)  Defendants move to dismiss these claims, arguing that (1) any events occurring before July 29, 2022 are time-barred, and (2) any timely events are nonetheless insufficient to make out plausible claims for hostile work environment and retaliation. (Defs.' Br. at 5-6, 8-13.)  The Court agrees.

### i.   The Title VII Hostile Work Environment Claim Is Untimely

Plaintiff alleges that Defendants created a hostile work environment based on her race and/or ethnicity in violation of Title VII.  (Compl. ¶¶ 1, 100-16.)  To establish a hostile work environment claim under Title VII, a plaintiff must plausibly allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Sys.,

Inc., 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).  Importantly, Title VII requires claimants to file a charge with the EEOC within 300 days of the alleged acts.  See 42 U.S.C. § 2000e-5(e)(1); see also Valtchev v. City of New York, 400 F. App'x 586, 588 (2d Cir. 2010) (summary order).  Plaintiff alleges acts that occurred between summer 2020 and August 1, 2022 in support of her hostile work environment claim.[5]  However, the statutory period bars allegations of conduct predating July 29, 2022, absent an applicable exception to the limitations period.

Plaintiff avers that the continuing violation doctrine saves her untimely allegations.  Such doctrine applies where the alleged untimely acts "were part of a continuing policy and practice of prohibited discrimination."  Valtchev, 400 Fed. App'x. at 588; see also Lugo v. City of New York, 518 F. App'x 28, 29 (2d Cir. 2013) (summary order).  That is, the doctrine applies where "a series of separate acts . . . collectively constitute one 'unlawful employment practice.'"  See Nat'l R.R. Passenger Corp. v. Morgan,

---

[5] As explained, the Court construes the undated events to have occurred in the months before August 1, 2022.  (See supra n.4.) Even so, courts routinely find undated allegations insufficient to serve as the timely anchor for a continuing violation.  See, e.g., Trinidad v. N.Y.C. Dep't of Correction, 423 F. Supp. 2d 151, 166 (S.D.N.Y. 2006) (finding undated allegations fail to create a continuing violation because no alleged act of discrimination occurred within the limitations period); Chan v. N.Y.U. Downtown Hosp., No. 03 Civ. 3003 (RMB), 2006 WL 345853, at *6 (S.D.N.Y. Feb. 14, 2006) (same).

536 U.S. 101, 117 (2002) (<u>citing</u> 42 U.S.C. § 2000e-5(e)(1)).  It follows that, provided a plaintiff is alleging such acts constitute a single unlawful employment practice, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period."  <u>Id.</u>  Put another way, a claim for hostile work environment will not be time-barred if (i) all acts constituting the claim are part of the same, continuous alleged unlawful employment practice, and (ii) at least one alleged act falls within the required time.  <u>See id.</u> at 122; <u>see also</u> <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 220 (2d Cir. 2004) ("[A] plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.").

By contrast, "discrete acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," do not implicate the continuing violation doctrine.  <u>See</u> <u>Morgan</u>, 536 U.S. at 112, 114.  Thus, the fact that an employee was terminated during the limitations period is not enough to "pull in [a] time-barred discriminatory act."  <u>Id.</u> at 113.  Retaliatory employment decisions, too, each constitute a "separate actionable 'unlawful employment practice'" that "cannot form the basis for a continuing violation claim."  <u>Gutierrez v. City of New York</u>, 756 F. Supp. 2d 491, 500 (S.D.N.Y. 2010) (citing <u>Morgan</u>, 536 U.S. at 114).

Plaintiff does not allege any timely acts to "'anchor[]' earlier, related acts," such that she can present "a single, timely claim." See Perez v. City of New York, No. 1:23-cv-00447 (CM), 2024 WL 898943, at *11 (S.D.N.Y. Feb. 29, 2024) (citation omitted). Although Plaintiff alleges a combination of dated and undated events in support of her Title VII claim for hostile work environment, all but one of the allegations supporting Plaintiff's hostile work environment claim preceded July 29, 2022, and the other, timely acts relate to Plaintiff's participation in an anonymous survey and a post-survey investigation.[6]  (See Compl. ¶¶ 17, 22-76, 81, 85-92.)  As Plaintiff's alleged participation in the survey and subsequent investigation support the Title VII retaliation claim, these same acts "cannot form the basis for a continuing violation claim." Gutierrez, 756 F. Supp. 2d at 500.

Plaintiff appears to recognize this shortcoming because she attempts to recast previously alleged acts of retaliation as "Hostile Work Environment Events" in her opposition brief.

---

[6] The Complaint alleges that after Plaintiff had submitted her survey responses on August 3, 2022, (see Compl. ¶¶ 84, 93), she was scheduled for overtime shifts as "punishment," she was "disciplined" and "fals[ly] accus[ed]" of not being a team player, and Nikoloulias was hired "to specifically target [her] for an eventual calculated, pretextual termination."  (Id. ¶¶ 94-97.) The Complaint explicitly relates each of these successive events to Plaintiff's completion of the survey.  (See id. ¶¶ 94-98 (repeating "[s]hortly after submitting these responses . . ." and "[w]ithin [] months of submitting these responses . . ." she was "punished" or "disciplined").)

(See Opp'n Br. at 3-4.)  Even assuming arguendo that Plaintiff could recycle the same events to support both Title VII claims, a "[c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss."  Cambridge Cap. LLC, 565 F. Supp. 3d at 453 n.11.

Thus, the only timely act alleged in support of her hostile work environment claim is Wyka's termination on August 1, 2022. (See Compl. ¶ 81.)  But this allegation falls short for two reasons.  First, termination is a "discrete act" that cannot form part of the same continuing act.  Morgan, 536 U.S. at 114.  Second, the alleged discriminatory conduct must occur because of Plaintiff's protected characteristic.  See 42 U.S.C. § 2000e-2(a)(1); see Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007).  That is, while alleged harassment against another employee may support a claim for hostile work environment, the other employee must nonetheless belong to the same protected class as Plaintiff.  See Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 310 (S.D.N.Y. 2001); see also Leibovitz v. N.Y.C. Transit Auth., 252 F.3d 179, 190 (2d Cir. 2001).  Plaintiff's hostile work environment theory is rooted in discrimination based on her being Asian and Thai.  (See Compl. ¶ 17.)  Wyka is Polish.  (See id. ¶ 77.)  Wyka's termination is therefore unrelated to Plaintiff's claim for hostile work environment and cannot anchor the untimely

acts.    Accordingly,  the  continuing  violation  doctrine  does  not apply,  and  the  limitations  period  bars  Plaintiffs'  untimely  acts.

The  Court  also  observes  that  Title  VII  does  not  serve  as  a "general  civility  code."   See  Oncale  v.  Sundowner  Offshore  Servs., Inc.,  523  U.S.  75,  81  (1998).   Thus,  in  the  absence  of  any  plausible allegations  to  support  her  claim  for  hostile  work  environment, Plaintiff's  first  cause  of  action  must  be  dismissed.

### ii.  The Title VII Retaliation Claim Is Meritless

Plaintiff  does  not,  as  discussed  supra,  have  the  same timeliness  issue  with  her  Title  VII  retaliation  claim.   Rather, Defendants  argue  that  this  claim  fails  because  Plaintiff  cannot plausibly  allege  the  elements  of  a  Title  VII  retaliation  claim. (Defs.' Br. at 11-13.)   Again,  the  Court  agrees.

Title  VII  prohibits  employers  from  retaliating  against  an employee  because  the  employee  "has  opposed  any  practice  made  an unlawful  employment  practice  by  this  subchapter,  or  because  [s]he has  made  a  charge,  testified,  assisted,  or  participated  in  any manner  in  an  investigation,  proceeding,  or  hearing  under  this subchapter."   42  U.S.C.  §  2000e-3(a).   To  establish  a  prima  facie case  of  retaliation  under  Title  VII,  a  plaintiff  must  show  that: (1)  she  participated  in  a  protected  activity;  (2)  the  defendant knew  of  this  activity;  (3)  the  defendant  took  adverse  action against  her;  and  (4)  a  causal  connection  exists  between  the  alleged

adverse employment action and the protected activity.  See Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006).

Under the first prong, a plaintiff must demonstrate that she took "actions . . . to protest or oppose statutorily prohibited discrimination." Aspilaire v. Wyeth Pharms., Inc., 612 F. Supp. 2d 289, 308 (S.D.N.Y. 2009).  For example, "[c]omplaining to a supervisor, instituting litigation, or filing a formal complaint about the defendant's discriminatory conduct are each considered protected activities." Moore v. Hadestown Broadway Ltd. Liab. Co., No. 23-CV-4837 (LAP), 2024 WL 989843, at *6 (S.D.N.Y. Mar. 7, 2024) (citation omitted).  "The onus is on the speaker to clarify to the employer that [s]he is complaining of unfair treatment due to h[er] membership in a protected class and that [s]he is not complaining merely of unfair treatment generally." Aspilaire, 612 F. Supp. 2d at 308-09.

Under the second prong, the defendant "must have understood, or been able to understand, that plaintiff's [complaint] was directed at conduct prohibited by Title VII." Velasquez v. Goldwater Mem'l Hosp., 88 F. Supp. 2d 257, 264 (S.D.N.Y. 2000). A complaint which "[does] not in any way link [plaintiff's] comments to her protected status" is insufficient to put a defendant on notice of a protected activity.  See id.  Although a plaintiff need not prove that her underlying complaint had merit, she must show that "it was motivated by a good faith, reasonable

belief that the underlying employment practice was unlawful" under Title VII.  Johnson v. City Univ. of N.Y., 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014) (citation and internal quotation marks omitted). To be clear, alleging a violation of Title VII necessitates a showing of discrimination "that permit[s] the inference that plaintiff was subjected to a hostile work environment because of her [membership in a protected class]."  See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 15 (2d Cir. 2013).

Under the third prong, a plaintiff must show that there was an adverse change to her employment.  See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015).  Adverse employment actions encompass "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).  Termination, specifically, is "undisputedly an adverse employment action."  Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020).

Finally, under the fourth prong, a plaintiff must plausibly allege that retaliation was the "but-for" cause of the defendant's adverse action.  Vega, 801 F.3d at 90-91 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)).  Put another way, "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action . . . ."  Nassar, 570 U.S. at 360.

A plaintiff establishes causation either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Littlejohn v. City of New York, 795 F.3d 297, 319 (2d Cir. 2015) (internal quotations and citations omitted).

On a motion to dismiss, "the allegations in the complaint need only give plausible support to . . . reduced prima facie requirements . . . ." Id. at 316 (emphasis added). In other words, a plaintiff need only allege that the defendants took an adverse employment action against her because she opposed an unlawful employment practice. See Addonizio v. Nuvance Health, No. 23 CV 1582 (LAP), 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (citation omitted). Here, Plaintiff alleges that, because of her participation in the anonymous survey and post-survey investigation, she was specifically targeted for months and, ultimately, unlawfully terminated. (See Compl. ¶¶ 1, 16, 117-32.) Because termination is clearly an adverse employment action, the Court assesses only whether Plaintiff has plausibly alleged prongs (1), (2), and (4). The Court finds that, even against the "reduced" showing applicable at the motion to dismiss stage, Plaintiff cannot make out a plausible claim for retaliation.

For starters, there is no protected activity. In her anonymous survey responses, Plaintiff expressed several complaints about Defendant Dunleavy's conduct in the workplace. (<u>See</u> Compl. ¶ 93.) Plaintiff wrote that Dunleavy was a "dictator," (<u>id.</u> ¶ 93.vii.), who "creates . . . chaos," (<u>id.</u> ¶ 93.ii.), "puts the entire team on edge[,] and makes for an unhealthy work environment." (<u>Id.</u> ¶ 93.iii.). Yet, these responses are insufficient to show that Plaintiff's participation in the survey was done "to protest or oppose statutorily prohibited discrimination." <u>Aspilaire</u>, 612 F. Supp. 2d at 308. Even more, nothing in Plaintiff's responses could have allowed Defendants to "understand . . . [her] opposition was directed at conduct prohibited by Title VII." <u>See Velasquez</u>, 88 F. Supp. 2d at 264.

The survey response that most closely nears an allegation of discrimination is that Dunleavy had a "personal dislike" for a trainee and would "often comment[] on her appearance [which] made the team feel uncomfortable." (<u>Id.</u> ¶ 93.xii.) Even so, that Dunleavy made comments about an employee's appearance-devoid from any clarification that this treatment was "due to . . . membership in a protected class"-falls short of permitting an inference that Plaintiff was complaining of discrimination on the basis of race and/or ethnicity. <u>See Aspilaire</u>, 612 F. Supp. 2d at 309; <u>see also Kelly</u>, 716 F.3d at 16.

Similarly, Plaintiff's participation in the post-survey investigation does not constitute a protected activity because she fails to allege any specificity of the complaints made therein. (See Compl. ¶ 121); see Kelly, 716 F.3d at 15 (finding plaintiff must allege "factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her [membership in a protected class.]"). While Plaintiff may have complained of "unfair treatment generally[,]" Aspilaire, 612 F. Supp. 2d at 309, Plaintiff did not "link her comments to her protected status." See Velasquez, 88 F. Supp. 2d at 264. As Plaintiff's survey and post-survey investigation responses did not identify any unlawful discrimination under Title VII, they could not have possibly, let alone plausibly, put Defendants on notice of the alleged discrimination.

Furthermore, because Plaintiff cannot adequately plead prongs (1) and (2), she cannot plausibly allege a causal link between her participation in the survey and post-survey investigation and the alleged targeting and eventual termination. Put simply, retaliation cannot occur where, as here, there is no protected activity and the Defendants were not on notice. Accordingly, Plaintiff cannot make out elements (1), (2), and (4) of her retaliation claim under Title VII, and it must fail.

For at least the reasons above, the Court finds that Plaintiff cannot allege a plausible claim for retaliation under Title VII.

The retaliation claim, like the hostile work environment claim, is therefore dismissed.

**B.  The Court Declines to Exercise Supplemental Jurisdiction Over the NYSHRL and NYCHRL Claims**

Having dismissed the federal-law claims over which it had original jurisdiction, the Court must now decide whether to exercise supplemental jurisdiction over the remaining state- and city-law claims.

A district court may decline to exercise supplemental jurisdiction over a claim where all claims over which it had original jurisdiction have been dismissed.  See 28 U.S.C. § 1367(c)(3).  While district courts have discretion to exercise supplemental jurisdiction over remaining state law claims, when "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction[.]" Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 81 (2d Cir. 2018) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  In conducting such an evaluation, courts balance "judicial economy, convenience, fairness, and comity." Id. at 81.  In the context of employment discrimination cases, courts in this district routinely decline to exercise supplemental jurisdiction over state- and city-law claims when the federal claims have been dismissed.  See, e.g., Charley v. Total Office Plan. Servs., Inc., 202 F. Supp. 3d 424, 432 (S.D.N.Y.

2016); <u>Murray v. Visiting Nurse Servs. of N.Y.</u>, 528 F. Supp. 2d 257, 280-81 (S.D.N.Y. 2007).

Here, the balance of factors weighs in favor of declining jurisdiction over Plaintiff's state- and city-law claims. Accordingly, the Court declines to exercise supplemental jurisdiction and will not evaluate the NYSHRL or NYCHRL claims.

**C. The Court Denies Leave to Amend**

While leave to amend should be "freely given when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), courts may properly deny leave to amend a complaint where amendment would be futile. See <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). "In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." <u>In re WorldCom, Inc. Sec. Litig.</u>, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004). As to Plaintiff's federal-law claims, the Court finds that granting leave to amend would be futile.

Plaintiff has not requested leave to amend or otherwise indicated to the Court that she possesses facts capable of curing the pleading deficiencies of her Title VII claims. See <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 505 (2d Cir. 2014) (reasoning that a court need not grant leave to amend where the plaintiff fails to identify how amendment would cure the pleading deficiency). Defendants also note that Plaintiff has twice had the opportunity to amend her Complaint, but she declined.

(<u>See</u> Defs.' Reply at 14 (recounting the offers).)    Accordingly, the Court finds that amendment would be futile, and it dismisses Counts I and II—the Title VII claims—with prejudice.    <u>See</u> <u>In re WorldCom, Inc. Sec. Litig.</u>, 303 F. Supp. 2d at 391.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss, (dkt. no. 16), is GRANTED.    Counts I and II are dismissed with prejudice.    Because the Court declines to exercise supplemental jurisdiction over the remaining state- and city-law claims, the Court dismisses them without prejudice to renewal in a state court of competent jurisdiction.    The Clerk of the Court is directed to mark the above-captioned case as closed and any open motions denied as moot.

**SO ORDERED.**

Dated:  September 26, 2024
        New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge